Our first case is Apple v. Corephotonics, 2022-1325. Ms. Oliver. Good morning, and may it please the Court. Angela Oliver on behalf of Apple. During my opening argument, I'll be addressing Apple's appeal of a few dependent claims, and I'd like to begin by addressing Claims 3 and 19 and Claims 8 and 24. The motivation analysis for these two sets of claims is similar, but not identical. But the underlying motivation for both of these is guided by two critical facts that are not in dispute. First, a poseta would have been motivated to lower the f-number of a lens assembly due to the known advantages of having a lower f-number. And second, one way to go about lowering the f-number is to increase the diameter of a lens to allow more light into the system. Those two facts are the driving motivations for Apple's analysis of these four claims. Now, particularly with respect to Claims 3 and 19, those claims simply require a diameter to be within a certain range, and Apple presented a straightforward analysis regarding why this would have been obvious. Beginning with Ogino's Example 5, a poseta would have wanted to lower the f-number, and a target goal would have been 2.45 because that is the lowest f-number that's already disclosed in the Ogino reference. Now, to lower that number, a poseta would have increased the diameter to allow more light into the system. And when you model that in lens design software, the claimed range, a diameter within the claimed range, gives you that target f-number. So the board did not fully walk through that analysis in its decision regarding Claims 3 and 19 because it got so focused on this idea of changing the shape of the lens. And respectfully, for Claims 3 and 19, the change in shape of the lens is not relevant because that's simply not part of the claim limitations. Isn't the board just simply taking on your arguments at the level that you made them? You've presented the same figure, the same lens arrangement for both the claims that required the change in the shape of the first lens and the ones that did not, 3 and 19. So was it an abuse of discretion for the board to think that you were just making the same argument as to all those claims? So respectfully, I believe it was because the lens design presented was the same, but that is a complete lens design. And it, of course, includes things that go beyond just the claim limitations. For Claims 3 and 19, all that is required to show motivation is to show why the diameter changed. Now, particularly for Claims 8 and 24, the lens shape is required to be changed. So it makes sense to look for the motivation to change the shape. But your argument is that they should not have addressed all four claims the same way and that they failed to give an adequate explanation of their rejection of your argument with respect to the ones that don't need the lens change shape, correct? That's one of our arguments. And so my question to you is, was that an abuse of discretion for the board to take that on that way, given how you articulated your arguments, which combined all four claims together? Respectfully, I believe it was an abuse of discretion. How is it an abuse, given that they did what you did? Well, because at the end of the day, the board should be focused on showing whether the claim limitations have been met. And so anything beyond that, that would have been changed in correspondence with that as part of the lens design software is just not relevant. And I think the difference between these two claims can be seen by the fact that Apple added additional evidence for Claims 8 and 24. So there is some indication in how we briefed this before the board that there is a difference between the two claims. So specifically at Appendix 1114, Dr. Sastian provides a specific motivation for changing the shape of the lens. And there he explains the shape was changed to allow the lens to better focus incoming light and providing a thicker edge for easier manufacturing. So there was additional evidence for those specific claims regarding the change in shape. Now, I think overall, aside from the argument about how this was briefed and whether the board should have done more for Claims 3 and 19, with respect to all four of these claims, the board still erred as a matter of law in how it analyzed the shape issue. So the board at Appendix Page 39 said it acknowledged Apple's evidence regarding motivation to change the shape, and it didn't disagree with it. But it said that Apple had to explain why the change in shape was required to And Corporatronics makes this argument on appeal as well. But that's respectfully not the law. We have cases like Par Pharmaceutical and others that explain the obviousness does not require showing that this combination is better than others or that it's the best combination. And that was really the board's reasoning was that Apple should have explained why we needed to change the shape as opposed to something else. And so- This, your combination included this Ogino reference, correct? Yes. Doesn't Ogino say that it's a defining feature, that the image side surface lens be concave as opposed to convex? Respectfully, no. That's what Corporatronics argued. But Ogino particularly says at Appendix 1203 that its embodiments can be modified in various forms, including by changing the values of the radius of curvature. And that is the shape or curvature of the lens. So that's Appendix 1203, columns 16, 11 through 19. Did the board not say it was a defining feature, the shape of the lens? I don't think the board clearly made that finding. No, they talked about it at Appendix page 38. And they say that Corporatronics did not argue a teaching away. So they certainly didn't make any teaching away findings. And after beyond that, I don't believe they go forward to make specific findings and address this particular piece of Ogino that we've cited here. So respectfully, I don't believe Ogino teaches away or anything like that. And also, even if that were an optimal design in Ogino, that still isn't enough to undermine obviousness. So for example, in Galderma Labs versus Tomar, there was no teaching away where the invention required a higher concentration of a drug, even though the prior art indicated that a certain lower concentration was optimal. And another case that supports this is the In Re Gurley case that's cited by the court in Ray Fulton. So in sum, I believe for all of these claims, the court should at least vacate and remand because the board improperly required Apple to explain why its change would have been preferred over other options. And that's simply not the law. I'd like to briefly address Apple's challenge to ground four as well, which deals with claims 16 and 30. Now, these are based on a totally different set of prior art. And here, the claim limitations require the first lens to have a center to edge thickness ratio of less than three. Now, the bike reference that Apple presented expressly teaches that claimed ratio of three to one in its rules of thumb regarding manufacturing. And that should have been enough to show that the limitation would have been obvious. But the board rejected Apple's argument by focusing on a different rule of thumb in bike, that there should be a manufacturing tolerance of 0.02 millimeters. And this was error because bike tells us that its rules of thumb are just quick generalizations. Bike says they're useful for initial discussions, but they quickly break down. And bike explains that these are designed for ideally designed optics. So in other words, bike itself makes it very clear that these are not hard and fast rules. And that's supported by the testimony of Apple's expert as well at appendix 6124. And it's consistent with this earlier treatment of this same reference in the 1961 appeal between these same parties. There, the court said, bike itself recognizes the need for tremendous flexibility for lens designers. Now, I think what the court, the board did here is trying to distinguish that earlier case is saying that the rules here are more closely related than they were in the 1961 case. But even if that's true, at most what we have is a trade-off between improved manufacturability for the three-to-one ratio and reduced manufacturability due to the manufacturing tolerance. But trade-offs are common in the design process, and that does not preclude a finding of obviousness. In fact, in the 1961 case, the court held that the board properly rejected the blanket assertion that willingness to incur reduced manufacturability would have undermined motivation to improve manufacturability in other ways. So it is consistent in an obvious analysis to use one of those rules without being bound by the other. But even if we agree with all that, that doesn't leave a lack of substantial evidence for the board's adoption of a different position, does it? Respectfully, I believe it does because, for two reasons. One, the existence of trade-offs itself cannot be enough to undermine the motivation to combine. And so there's no substantial... Have we said that? I believe that's clear, unless there's some other reason that makes sense with respect to why the trade-off would essentially outweigh the motivation. As long as there's an option, that is what the case law, such as PARFARMA, requires. It doesn't have to be the best option. So even if it would have been... Because it doesn't have to be a best option, but a fact finder could say, it undermines my belief in your motivation to combine argument that there are these trade-offs. And I believe I'm persuaded on the merits that a person's skill in the art would not actually be motivated to do this given the trade-offs. We've never said that's an improper line of reasoning, have we? I don't have a case that's directly on point for that. But what I do think here is that we have the 1961 opinion, which has already interpreted the same reference. And we just have the disclosure from BIKE itself on its face, saying that these rules quickly break down. They're only useful for initial discussions. And so it's perfectly consistent to say that a procedure would have been motivated by one of them, but not be dissuaded by another, even when they're fairly related, as the board suggested here. So in sum, BIKE expressly contemplates flexibility with respect to how its rules are used. And so even though it might have been more ideal to satisfy both rules of thumb, obviousness does not require that. And so the fact that BIKE expressly teaches the exact ratio in these claims shows that the ratio would have been obvious to one of ordinary skill in the art, regardless of what other recommendations the BIKE reference provides. So in sum, the board erred in its analysis of grounds three and four, which led it to reach the wrong conclusions regarding patentability of a few claims. If there are no further questions, I will ask this court to reverse or vacate and remand with respect to grounds three and four. We will save your time, Ms. Oliver. Mr. Liddell. Good morning, and may it please the court, Brian Liddell for Corporatronics. I would like to start with Apple's appeals, and then I'll turn to the Cross appeal, with the court's permission. I think as to both of the issues that Apple argued relating to grounds three and four of the petition, it's clear that the board's decision was based on a weighing of the evidence and a finding that Apple's evidence, particularly as to the motivation combined, was simply not compelling, not persuasive. In each of those two grounds, the board considered all the evidence. It weighed that evidence. It made findings specific to the points that Apple presented, and in the manner that Apple presented them, as a basis for finding them non-persuasive. It's hard for me to imagine how that doesn't satisfy the substantial evidence test, particularly when we're talking about a finding against the party with the burden of proof. So the board is entitled to find that the evidence is simply not persuasive, that the expert did not persuasively explain the motivation combined, and that's a obviousness as it did in these two grounds. I'm happy to address specific questions about that if the court has them. I have just one. Ogino, where does the board make a finding that the shape of that first lens is a defining feature of that prior art reference? Sure. So the board has a discussion of that at page 38 of the appendix, and specifically it quotes a portion of Ogino. Now, I think it may be Ogino, I'm not entirely sure. But in any event, I did want to clarify, because there's a block quote here, but it may be a little difficult to parse, because what the reference says is that the first lens, the one that's closest and the one we're talking about, it has a meniscus shape which is convex toward the object side. Now what that means, so a meniscus shaped lens, it's a curved lens where you have, so if it's convex on the object side, necessarily it is concave on the image side. So that's where the board is finding that. That discussion of Ogino's reference to the need for a meniscus shape for that lens, that's why it's important that it be concave. And that's... The idea that that's a defining feature of that prior art reference, however we pronounce it, is that your words or is that the board's words, defining feature? I believe the board accepted the... So we certainly made that argument, and I think the board accepted it in the paragraph immediately above the block quote. They note that that's the argument, and they point to this very quote as support for that point. So I think the board accepted that argument and made findings based on that as shown in that page of the appendix. Unless there are other questions about those first two issues, I'll turn to the cross appeal. So the cross appeal raises a rather different set of issues. This was ground two of the petition, and ground two of the petition related to making a change, basically, and was argued to be modifying one of the lenses in a very particular way. And the problem with that modification was the evidence showed that you couldn't actually make it in the real world, that it was essentially an impossible lens. There was extensive evidence presented that, in fact, this lens was so thin in its edges that using the techniques the board said you would have to use, you couldn't make it. And indeed, the expert evidence showed you couldn't make it with any technique. Apple never rebutted that evidence. It never presented any evidence showing that you could actually make the lens in the modification form that was presented in the petition. It essentially did two things. It misdirected and suggested that the argument was about commercial scale manufacturability as opposed to just the basic ability to make the lens ever. And second, it incorrectly relied on essentially a sleight of hand in Apple's reply, where Apple presented an entirely different design that was nowhere in the petition and suggested that that design could be manufactured. While that may or may not be true, it can't show that the design actually presented in the petition could be manufactured. Showing that you could make one thing doesn't necessarily prove, and they presented no proof that you could make the other, which was what was actually presented in the petition. And it's pretty clear that the board made this error and actually relied on not the, it relied on, it essentially mischaracterized Core Photonics position. So Core Photonics explained you can't make this lens. The board characterized that instead falsely as you couldn't make it on commercial scale. That's at Appendix 33. It characterized the problem as large-scale manufacturing considerations. But that wasn't what was presented. What was presented in the SIR reply in particular was that you couldn't make it at all. This was explained both in the SIR reply itself, for example, at Appendix pages 61, 53 to 55, but also in the testimony and submissions from Core Photonics expert Dr. Milster, who explained that this couldn't be made, that it wasn't feasible. There are citations to that in our brief, but specifically he discussed that at pages 54, 67 to 68 of the appendix, and at 55, 47 to 48 of the appendix. That's Dr. Milster's deposition testimony about that issue. I'm happy to address questions if you have them about this issue. I guess in assessing whether, in assessing your argument that the board mischaracterized your own argument, is that a question that we review for abuse of discretion? No. I think because the question is did the board actually address the arguments presented below, I believe that's a substantial evidence question. Was there substantial evidence for the board's finding? We submit the one aspect that the board had to find was that this lens that Apple was arguing would have been obvious to make based on the prior art was a lens you could actually, that a person skilled in the art could actually make. That was something that was presented, and it wasn't an argument that was ever addressed by the board. I don't think that's a substantial evidence. In fact, I would argue that failure to address an argument entirely or mischaracterization of that argument in failing to address it is a legal error that arguably could be reviewed for clear error and de novo, but at a minimum, it's a substantial evidence question. Haven't we said, though, that the board has discretion to read the petition, to read the briefs, to figure out what arguments are actually before it? There's a limit. They can't abuse their discretion. I would have thought this was something we look at for abuse of discretion. They read your brief. They look at your expert. They try to understand your argument. They're entitled to maybe get a little bit wrong, but we have a deferential review of how they read it. That's not correct? I don't think this is about just interpreting the argument. I think it's really taking one argument and replacing it with a different. If they did that, that would be an abuse of discretion. Maybe you hesitate to say that. I would say even under the abuse of discretion standard, I think this was an abuse of discretion in the sense that the board clearly went far beyond or radically changed the argument. Their whole discussion is about commercial manufacturability, which they also isn't part of the claims, but that ignores that manufacturability in the sense of being able to make the thing that you're claiming is an obvious thing is absolutely a consideration you would have to have. The claims are not to some hypothetical or fictional lens. They're directed for a lens assembly. They're directed to a real thing that is a lens assembly. A person of skill in the art confronted with that and looking at the prior art who concluded that a potential combination of the prior art could only be made in a hypothetical world and not in the real world, there's no question that there would be no motivation to make such a combination. That's completely contrary to all of the case law. This isn't a case where, well, you might try to make it for particular reasons, and there were arguments made, oh, people of skill in the art might be interested in making lenses for research purposes or study purposes, but you still have to be able to make them. They still have to be things that could exist in the world, not hypothetical constructions of the mind in the same way that a patent disclosing or talking about a time machine wouldn't be helpful here. That's the kind of lens that Apple was suggesting a person skilled in the art would choose to make. It's just completely unrealistic. We will save the rest of your time for a cross appeal, assuming there's something to rebut. Ms. Oliver. May it please the court. As to Apple's appeal, I'd like to focus just on ground three. Corporatronics could not point to a place in the board's decision where the board found that Ogino's lens shape was a defining feature of Ogino that could not be changed. So that is not an independent basis for affirming the board's decision. The board bases this decision on its requirement that Apple needed to show why this proposal was better than other options, and that is a legal error that impacted all four claims in ground three and favors vacator and remand. Now turning to corporatronics appeal with respect to ground two, the board's findings are supported by substantial evidence. Apple demonstrated and the board found that a procedure would have been motivated to lower the F number in Ogino's. Why don't we speak English instead of using anagrams and talk about a person of ordinary skill? Thank you. Yes, yes, your honor. Apple demonstrated that one of skill in the art would have been motivated to lower the F number in to an F number of 2.8, and that's not in dispute. The only issue here is reasonable expectation of success. Now corporatronics has talked a lot about whether Apple's first example of a lens modified to have an F number of 2.8 could be manufactured, but what we have not heard corporatronics say is that one of skill in the art would not have expected success in lowering the F number to 2.8 generally. In other words, corporatronics has not explained why a person of would not have been able to make the claimed invention. Instead, corporatronics focuses only on the example Apple presented in its petition to show how this could be done, but that is just one possible lens design as Apple explained in its petition at appendix page 479. There is evidence that a procedure can make a modified version of Ogino's example five with an F number of 2.8, and first Apple of course provided other reasons why one of skill in the art would have made these assemblies aside from manufacturability, and Apple also went further and explained that if one of skill in the art wanted to address the particular manufacturing concerns raised by corporatronics, one of skill in the art could have done so without changing the fact that the claim limitations would still have been satisfied, and this is particularly true given the high level of skill in the art here, which includes knowledge of how to use lens design software such as ZMAX, and there's a helpful discussion of this showing the high level of skill in the art here in the Fisher textbook that the parties have discussed in the briefing. Unless there are any specific questions from the court, Apple would respectfully ask that the court affirm with respect to ground two. Thank you, Ms. Oliver. Mr. Liddell has some time on the cross appeal. Your Honor, I don't anticipate using all of it, but very briefly, I think the argument I heard my friend make a moment ago was that the example that corporatronics pointed out was impossible in the proceedings below was only one possible design and that didn't preclude other possible designs. The key is it's the one design that Apple relied on in its petition. It's the only design Apple presented as showing that this supposed combination could be rendered or could render the claims obvious. They suggested in reply there was a completely different design that was nowhere presented in the petition that was a different way to allegedly combine the references. That goes well beyond this court's precedence like Wasika in terms of the changes that one's allowed to make on reply. That would be an entirely different way of combining the references, which is exactly what cases like Wasika say you're not allowed to do in reply. In other words, it was presented essentially in two possible ways, neither of which helps Apple. Either it's an entirely different combination of the prior art than what was presented in the petition, in which case it should never have been considered by the board. Or it supposedly helps to show that the combination actually presented in the petition could be made in the real world, but that's a logical fallacy and there was no expert testimony of any kind to connect those two and suggest that this one, and whether it might have been manufacturable, showed that the prior one could have been manufactured. And so in either event, that design presented in the reply can't save the board's failures here. Thank you to both counsel. The case is submitted. Thank you.